2020 IL App (1st) 191863-U

SIXTH DIVISION
MARCH 27, 2020

No. 1-19-1863

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| AMIR K. SHEIBANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 M1 131537 |
| | ) | |
| JOHN KENNELLY, and | ) | |
| KENNELLY & ASSOCIATES, | ) | Honorable |
| | ) | Catherine A. |
| Defendants-Appellees. | ) | Schneider, |
| | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly entered summary judgment in favor of the defendant because the plaintiff's action is barred by the statute of limitations.

¶ 2    The *pro se* plaintiff-appellant, Amir K. Sheibany, filed a legal malpractice action against the defendants-appellees, John Kennelly and Kennelly & Associates (collectively, Kennelly). The circuit court of Cook County entered summary judgment in favor of Kennelly on the basis that Sheibany's action was barred by the statute of limitations, the statute of repose, and Sheibany's

failure to disclose an expert witness. Sheibany now appeals. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                    BACKGROUND

¶ 4     In April 2011, Sheibany's father, Amir A. Sheibany (Amir Senior), purchased a condominium unit at 1033 S. Ontario Street, Unit 2EN, Oak Park, Illinois (the condominium unit). Kennelly represented Amir Senior in the purchase as the real estate attorney. Prior to the April 2011 closing, Amir Senior executed a power of attorney to Kennelly to represent him at the closing and execute all necessary documents.

¶ 5     At the time of the closing, there was a lien against the condominium unit by the Sanctuary of Oak Park Condominium Association (the condo association). The lien was for attorney's fees and unpaid assessments from the condominium unit's prior owners. The lien was not recorded at the time of the closing, and it is unclear from the record whether Amir Senior was aware of the lien.

¶ 6     On September 30, 2014, Amir Senior transferred ownership of the condominium unit to Sheibany via a quit claim deed. Amir Senior passed away a couple of months later.

¶ 7     On June 23, 2015, Sheibany entered into a contract to sell the condominium unit to new buyers (the buyers). Kennelly represented him in the transaction. A closing was scheduled with the buyers for September 2, 2015.

¶ 8     On August 10, 2015, three weeks prior to the closing, the condo association recorded the lien against the condominium unit in the amount of $2,727.84. Sheibany did not pay the lien.

¶ 9     During the closing on September 2, 2015, Kennelly advised Sheibany to sign an indemnity agreement with the title company so that the sale of the condominium unit could go through. The indemnity agreement gave Sheibany six months to resolve the outstanding lien. The indemnity

agreement specified that Sheibany would "diligently provide for the defense of any action" regarding the outstanding lien at his "sole expense." Additionally, an indemnity escrow was created in the amount of $6,293, funded out of Sheibany's proceeds from the sale of the condominium unit.

¶ 10     The outstanding lien was not resolved within the six months following the September 2015 closing. On June 22, 2016, the condo association filed a forcible entry and detainer action against the buyers. The condo association sought to satisfy its lien, or to gain possession of the condominium unit and rent it to satisfy the lien. Pursuant to the indemnity agreement, Kennelly began representing the buyers in the forcible entry and detainer action. According to Sheibany, he paid Kennelly $5,000 at that time to represent the buyers.

¶ 11     On September 19, 2016, Sheibany, through another attorney, sent a letter to Kennelly objecting to the use of the indemnity escrow to defend the buyers in the forcible entry and detainer action. Consequently, Kennelly advised both Sheibany and the buyers that he was withdrawing from the forcible entry and detainer action. The title company subsequently settled the forcible entry and detainer case using the indemnity escrow funds.

¶ 12     On September 20, 2018, Sheibany filed the instant legal malpractice action against Kennelly. His *pro se* complaint alleged:

> "In April 2011, [Amir Senior] purchased and took possession of [the condominium unit]. At the time of closing, [Kennelly] acting under Power of Attorney *** conducted an unauthorized transaction, namely the purchase of [the condominium unit] subject to a [*sic*] automatic lien and waiving the Title Insurance protections, and hid the fact from [Amir Senior], [Amir Senior's] lenders for this

transaction, and his son [Sheibany].

***

On June 23[], 2015, [Sheibany] entered into a contract to sell [the condominium unit]. At the closing which occurred on September 2[], 2015, [Kennelly], acting as [Sheibany's] attorney, advised [Sheibany] to sign an indemnity agreement with the title company *** in order to allow the sale to go through. The indemnity agreement gave [Sheibany] six months to resolve the lien with the [condo] association, and it created an indemnity escrow in the amount of $6,293.00, funded out of [Sheibany's] proceeds from the sale. *** Kennelly represented at the closing that he would resolve the lien with the [condo] association after the sale.

* * *

On June 22, 2016, the [condo association] filed a forcible detainer action [*sic*] against [the buyers] of the condominium [unit] ***, the resulting costs of which, including settlement and attorney['s] fees, completely depleted escrow fund the $6,293.00 ***. [Kennelly] represented [the buyers] in the above action and, for that purpose, charged [Sheibany] $5,000 for his legal fees, warning that if [Sheibany] did not pay the [buyers'] attorney['s] fees he would forfeit all the escrow money. ***"

The complaint continued by explaining that Sheibany attended a hearing in the forcible entry and detainer case on September 29, 2016. Sheibany alleged that during that hearing he heard Kennelly

"misrepresent" his position, "essentially contradicting his legal position for the proceeding 6 years." He further stated:

> "It was at this point that it became clear that [Kennelly] had known about the lien all along and had hidden it by issuing a Clear Title insurance policy and covering up the matter with correct, though immaterial legal facts. He was also acting with a conflict of interest, taking funds from myself as the seller and using it to defend the buyer[s], whilst agreeing to settle with the funds in the escrow account with the Title Insurance company.
>
> As a result of [Kennelly's] conduct, described in this complaint, [Sheibany] lost the entire escrow fund of $6,293.00, incurred additional legal fees from [Kennelly] in representing the [buyers] of the [condominium unit], in the amount of $5,000, and was billed an additional $1,557 by [the title company] incurred in the matter[] of the [forcible entry and detainer case] ***. Plus $350 in legal review of the case by another attorney."

The complaint sought $13,200 in damages, "representing [Sheibany's] costs deriving from Lien for legal fee's [*sic*], and additional legal fee's [*sic*] incurring in servicing said lien."

¶ 13 Kennelly answered the complaint by denying liability and asserting affirmative defenses, specifically that Sheibany's action was barred by the statute of repose and the statute of limitations. During discovery, Kennelly propounded interrogatories and requests to produce upon Sheibany, including all expert opinions or reports. Sheibany did not produce any expert opinions or reports before the discovery period closed.

¶ 14    On June 14, 2019, Kennelly filed a motion for summary judgment. In the motion, Kennelly argued that summary judgment was appropriate on three bases:

(1) the statute of repose barred Sheibany's claim, as legal malpractice actions may not be commenced more than six years after the date on which the act or omission occurred (735 ILCS 5/13-214.3(c) (West 2018), and the original alleged act occurred in April 2011 when Kennelly "conducted an unauthorized transaction" during Amir Senior's purchase of the condominium unit;

(2) the statute of limitations barred Sheibany's claim, as legal malpractice actions must be commenced within two years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought (*Id.* § 214.3(b)), and Sheibany was aware of the indemnity agreement and the escrowed funds during the September 2, 2015 closing; and

(3) Sheibany failed to properly disclose an expert opinion or report finding that Kennelly had breached the standard of care for an attorney.

¶ 15    Sheibany responded to Kennelly's motion for summary judgment by arguing that Kennelly "fraudulent[ly] conceal[ed]" his conduct until September 29, 2016." Sheibany also admitted that he knew the condo association had a lien against the condominium unit at the September 2, 2015 closing and that, at that time, he agreed to escrow funds pursuant to the indemnity agreement. However, he asserted that he was persuaded by Kennelly that he would be "sued by [the buyers] if [he] delay[ed] or cancel[ed]" the sale. He also claimed that Kennelly "promise[d] that he [would]

take care of lien after sale." Sheibany argued that summary judgment was inappropriate because the issue of "whether [Kennelly was] required to disclose the conflict of interest inherent in the[] representation of [the buyers] is *** very much in dispute."

¶ 16    Kennelly filed a reply in support of the motion for summary judgment and argued that Sheibany had failed to explain how he could not have been aware of the condo association's lien when he entered into the indemnity agreement on September 2, 2015, more than two years before he filed his legal malpractice action.

¶ 17    Following a hearing, the trial court granted Kennelly's motion for summary judgment "on all 3 bases contained therein."[1] This appeal followed.

¶ 18                                    ANALYSIS

¶ 19    We note that we have jurisdiction to consider this matter, as Sheibany filed a timely notice of appeal. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 20    Sheibany presents the following sole issue: whether the trial court improperly granted summary judgment in favor of Kennelly.

¶ 1    As an initial matter, we address Kennelly's request that we dismiss this appeal. Kennelly argues that this appeal should be dismissed because Sheibany's brief fails to comply with Rule 341(h). Specifically, Kennelly claims that Sheibany's brief: does not describe the action or his reasons for his appeal in the Nature of the Case section; misstates the correct standards of review; is argumentative in the Statement of Facts section and does not cite to the record on appeal; only cites to one legal authority; and more. Illinois Supreme Court Rule 341(h) (eff. May 25, 2018) provides strict rules which litigants must follow in submitting their appellate briefs. *Pro se*

---

[1]During the same hearing, the trial court also denied several motions filed by Sheibany which are not relevant to this appeal.

litigants, such as Sheibany, are not excused from following these rules which dictate the form and content of appellate briefs. *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5. While Sheibany's brief, at times, does fail to comply with some of the requirements under Rule 341(h), it nonetheless adequately complies with Rule 341(h) overall so that this court is able to comprehend the relevant facts and issues. Where violations of supreme court rules are not so flagrant as to hinder or preclude our review, the striking of a brief is unwarranted. *Cottrill v. Russell*, 253 Ill. App. 3d 934, 938 (1993). Thus, in the interest of justice, we decline to take the drastic action of dismissing this appeal.

¶ 21    Turning to the merits, the purpose of summary judgment is to determine if a genuine question of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Adams*, 211 Ill. 2d at 43. "Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt." *Wells Fargo Bank, N.A. v. Norris*, 2017 IL App (3d) 150764, ¶ 19. We review appeals from summary judgment rulings *de novo*. *Id.*

¶ 22    Sheibany argues that the trial court erred in granting summary judgment on all three bases (statute of repose, statute of limitations, and expert opinion disclosure). As we find that the statute of limitations issue is dispositive, we turn to it first.

¶ 23    An action for damages "against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the

person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2018). Our courts have repeatedly held that the statute of limitations set forth in section 214.3(b) incorporates the discovery rule, which tolls the limitations period to the time when a person *knows or reasonably should know* of his injury. *Blue Water Partners, Inc., v. Edwin D. Mason, Foley & Lardner*, 2012 IL App (1st) 102165, ¶ 48.

¶ 24    In this case, Sheibany filed his legal malpractice action against Kennelly on September 20, 2018. Sheibany complains of multiple acts by Kennelly, and it is a little unclear which act he considers to be the most egregious. However, the crux of his legal malpractice claim appears to be that: Kennelly "conducted an unauthorized transaction" in the April 2011 sale of the condominium unit when there was an unknown lien in existence; Kennelly advised Sheibany to sign the indemnity agreement and then failed to resolve the outstanding lien within six months; Kennelly created an undisclosed conflict of interest by representing the buyers in the forcible entry and detainer case; and Sheibany incurred damages by paying for the lien and associated attorney's fees for both himself and the buyers. Sheibany claims that the two-year statute of limitations had not expired by the time he filed his legal malpractice claim in September 2018, because he only "understood that [Kennelly] was indeed being dishonest" during a hearing in the forcible entry and detainer case in September 2016.

¶ 25    However, Sheibany's pleadings directly contradict this assertion. Throughout his pleadings, he admits that he was, at the very least, put on notice that something was amiss during the September 2015 closing when Kennelly advised him to sign the indemnity agreement in light of the recorded lien. His appellate brief even states: "This case, at its core, arises from [Sheibany's] sale of [the condominium unit], *which occurred in September 2015*, in which [Sheibany] was represented by [Kennelly]." [Emphasis added.]

¶ 26    Sheibany also makes several arguments regarding the alleged "conflict of interest" Kennelly created when he represented the buyers in the forcible entry and detainer case and the associated legal fees for that representation. Yet, Sheibany's complaint explicitly stated:

> "On June 22, 2016, the [condo association] filed a forcible detainer action [*sic*] against [the buyers] of the condominium [unit] ***, the resulting costs of which, including settlement and attorney['s] fees, completely depleted escrow fund the $6,293.00 ***. *[Kennelly] represented [the buyers] in the above action and, for that purpose, charged [Sheibany] $5,000 for his legal fees*, warning that if [Sheibany] did not pay the [buyers'] attorney['s] fees he would forfeit all the escrow money. ***" [Emphasis added.]

Through this admission, Sheibany *knew by June 22, 2016*, that the outstanding lien had not been resolved, that Kennelly was representing the buyers in the forcible entry and detainer case, and that Sheibany was paying Kennelly for the buyers' representation. This undoubtedly triggered the statute of limitations for a legal malpractice claim. See *Construction Systems, Inc. v. FagelHaber, LLC*, 2019 IL App (1st) 172430, ¶ 20 (for purposes of triggering the statute of limitations, a malpractice action may accrue when an attorney's act is a direct cause of the legal expense incurred by the plaintiff). Once the forcible entry and detainer action was filed against the buyers in June 2016, and Sheibany then paid Kennelly additional legal fees to represent the buyers in that action, *that* was the time for Sheibany to inquire further into a possible legal malpractice action against Kennelly. See *Dancor International, Ltd. v. Friedman, Goldberg & Mintz*, 288 Ill. App. 3d 666, 673 (1997) (the statute of limitations begins to toll when the purportedly injured party has a reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation

to inquire further on that issue). Indeed, Sheibany sent Kennelly a letter objecting to the use of the indemnity escrow for the buyers' defense on *September 19, 2016*. Curiously, though, Sheibany waited until *September 20, 2018* to file his legal malpractice claim.

¶ 27 Further, Sheibany was clearly aware of the indemnity agreement and its terms, which created the indemnity escrow and specified that Sheibany would "diligently provide for the defense of any action" regarding the outstanding lien at his "sole expense," when *he signed it during the September 2015 closing*. It would be preposterous to believe, under the facts of this case, that Sheibany only learned of the issues he now complains of at a hearing for the forcible entry and detainer case; months after the forcible entry and detainer complaint had been filed against the buyers and Sheibany had paid for that representation. Not to mention that Sheibany's complaint stated that the hearing occurred on *September 29, 2016*, and he filed his complaint on *September 20, 2018*, and so the two-year statute of limitations would nevertheless apply.[2]

¶ 28 It is arguable that Sheibany had a meritorious legal malpractice claim against Kennelly. Procedurally, however, his claim is barred. It is clear from the pleadings that no genuine issue of material fact exists concerning whether Sheibany knew of a possible injury more than two years before he filed his legal malpractice action. Accordingly, we find that the trial court properly granted summary judgment in favor of Kennelly on the ground that the claim is barred by the statute of limitations.

¶ 29 Because the statute of limitations issue is dispositive of this matter, we need not address the parties' other arguments regarding the statute of repose or expert witness disclosure.

---

[2]Sheibany argues on appeal that the hearing date was actually *September 13*, 2016, and that he "simply read[] a wrong timeline on [his] own timeline log." However, he never attempted to amend his complaint with the alleged correct date. Regardless, the letter sent he sent to Kennelly objecting to the use of the indemnity escrow for the buyers' defense contradicts this claim because it was dated *September 19*, 2016.

¶ 30                                CONCLUSION

¶ 31    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 32    Affirmed.